IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No: 23-CR-45 |
| v. | : | |
| **JOSEPH PAVLIK,** | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Joseph Pavlik, with the concurrence of his attorney, agree and stipulate to the factual basis below for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint

session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the

crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars in losses.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Pavlik's Participation in the January 6, 2021, Capitol Riot*

8. Joseph Pavlik ("Pavlik") traveled from Illinois, to Washington, D.C. where he met up with a larger group known as the "Guardians of Freedom" to attend the rally that former President Donald Trump held on January 6, 2021. Pavlik rented a vehicle and drove to Washington, D.C. on January 5. He and other members of the group checked into a hotel in the downtown area. On January 6, they attended the rally then later participated in the riot at the U.S. Capitol.

9. Pavlik took a gas mask and a chemical spray to the Capitol on January 6. He wore a helmet and tactical vest that he borrowed from another individual. Pavlik made his way to the area of the Lower West Terrace and he entered the Tunnel. The Tunnel provides direct

access to the U.S. Capitol. On January 6, it was guarded by numerous police officers, including officers from the United States Capitol Police and the Metropolitan Police Department. Between 2:41 p.m. and approximately 5:00 p.m., the officers guarding the Tunnel were under siege by rioters attempting to forcibly enter the Capitol building. At times, rioters attempted to use their numbers and collective mass in a heave-ho effort to push the officers back. Pavlik arrived at the Tunnel at approximately 3:45 p.m. Pavlik assisted the crowd in confronting the police officers that were attempting to prevent a breach of the Tunnel and the Capitol. Pavlik actively pushed into officers as he tried to force his way further into the right side of the Tunnel. Pavlik remained in the Tunnel for approximately 20 minutes. The officers ultimately succeeded in repelling rioters from the Tunnel.

10. Pavlik carried and possessed a dangerous weapon—chemical spray—while he was on Capitol grounds, including inside the Tunnel.

11. Pavlik knew at the time he entered the Lower West Terrace Tunnel to the U. S. Capitol building that he did not have permission to enter the building.

12. Pavlik knowingly and voluntarily admits all the elements of 18 U.S.C. § 231(a)(3). Specifically, Pavlik admits that he attempted to or did obstruct, impede, or interfere with a law enforcement officer engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder, and that the civil disorder obstructed, delayed or adversely affected commerce or the performance of a federally protected function.

13. In addition, Pavlik knowingly and voluntarily admits the elements of 18 U.S.C. § 1752(a)(1) and (b)(1)(A). Specifically, Pavlik admits that he knowingly entered and remained in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be

temporarily visiting, without lawful authority to do so, and, during and in relation to this offense, he did use or carry a deadly or dangerous weapon, that is, a chemical irritant.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: /s/ Holly F. Grosshans
    Holly F. Grosshans
    Assistant United States Attorney
    D.C. Bar No. 90000361
    U.S. Attorney's Office for the District of Columbia
    601 D Street, N.W.
    Washington, D.C. 20530
    Phone: (202) 252-6737
    Email: Holly.Grosshans@usdoj.gov

By:    /s/ Joshua Ontell
    Joshua Ontell
    VA Bar No. 92444
    Assistant United States Attorney
    U.S. Attorney's Office for the District of Columbia
    601 D Street, N.W.
    Washington, D.C. 20001
    (202) 252-7706
    joshua.ontell@usdoj.gov

DEFENDANT'S ACKNOWLEDGMENT

I, Joseph Pavlik, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 08-25-23

_____
JOSEPH PAVLIK
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/25/2023

_____
LARRY BEAUMONT
Attorney for Defendant