**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 1:23 CR 00045(TNM)3** |
| **JOSEPH PAVLIK,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT PAVLIK'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

**NOW COMES** the Defendant, **JOSEPH PAVLIK,** by and through his attorney, **LAWRENCE S. BEAUMONT**, and hereby files his sentencing memorandum in support of his sentencing for the offenses of Civil Disorder, a violation of Title 18 U.S.C. §231(a)(3) (Count 1), and Entering and Remaining in a Restricted Building or Grounds, a violation of Title 18 U.S.C. §1752(a)(1) and 1752(b)(1)(A)(Count 5). The offenses of conviction are a Class D Felony (Count 1) and a Class C Felony (Count 5) respectively. Sentencing is scheduled for December 1, 2023. Mr. Pavlik seeks a sentence below the low end of the guideline range, for reasons articulated below.

**I. Nature of the Offense**

Joseph Pavlik was charged in a 12 count indictment, filed February 10, 2023, along with Brian Peller and John Edward Crowley with various offenses relating to incidents that occurred at the Capitol Building on January 6, 2021. In a written plea agreement, filed with the court on August 25, 2023, Pavlik acknowledged his guilt, and entered a plea of guilty to counts One and Five of the indictment. In pleading guilty Pavlik admitted the following conduct:

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net

a. He travelled from Illinois to Washington D.C. to attend a rally in support of former President Donald Trump held on January 6, 2021;

b. He took a gas mask and chemical spray, wore a helmet and tactical vest as he made his way into the "tunnel";

c. He arrived at the tunnel at approximately 3:45, and was part of the crowd that confronted police officers that were guarding against a breach of the tunnel and the Capitol; While in the large dense crowd of individuals in the tunnel, Pavlik was pushed by others, and he pushed into officers as he tried to further his way into the right side of the tunnel;

d. Pavlik remained in the tunnel for about 20 minutes, did not enter the Capitol building, left the area of his own volition, and returned to his hotel room;

e. While at the tunnel and on Capitol grounds he carried and possessed a chemical spray;

f. He knew at the time that he entered the lower west terrace tunnel to the U.S. Capitol building that he did not have permission to enter the building;

g. Pavlik further admitted that he attempted to, or did, obstruct, impede, or interfere with a law enforcement officer engaged in the lawful performance of his official duties, incident to, and during, the commission of a civil disorder, and that the civil disorder obstructed, delayed, or adversely affected commerce or a federal protected function.

Pavlik, a retired Chicago fireman, traveled from Illinois to Washington D.C. at the invitation of his nephew, Jeremy Liggett. Liggett, is a leader in the "Guardians of Freedom" organization, which had a heavy presence in Washington, D.C. and is a Pro-Trump Organization. Liggett invited Pavlik to Washington D.C. to help provide security at a Trump rally, falsely claiming to Pavlik that he had a security contract with the United States Marshall Service to provide security services. Pavlik believed that to be true when Liggett made that representation, but he learned soon afterward that it was false. Upon arrival in Washington D.C. Pavlik was summoned to Liggett's hotel room where Liggett supplied him with a vest and the gas mask. While at Liggett's room a discussion was undertaken about the Pro-Trump rally and speeches, and providing security.

Lawrence S. Beaumont

Attorney at Law

650 N. Dearborn Suite 700
Chicago, Illinois 60654

(312)-287-2225
l.beaumont@att.net

On January 6, 2021 Pavlik left his hotel room in the morning hours, at approximately 3 a.m. Pavlik first went to provide security at the Ellipse, serving essentially as an usher. Pavlik was provided with a neon vest, under the direction of Liggett. Trump spoke at about 9 or 10 a.m., ending around 12 p.m., upon conclusion of that activity Pavlik returned to his hotel room.

While napping in his hotel room, at around 2 p.m., Liggett came to his room, inviting him to go to the Capitol grounds, but Pavlik originally declined the invitation. Pavlik later changed his mind and left the hotel heading to the Capitol out of concern for Leggett's safety. As he began the 1.5 mile walk from the Hampton Hotel to the Capitol: once in the lobby of the hotel Pavlik observed others dressed in protective gear and returned to his room and put on a protective vest, which had an attached gas mask, a helmet, and in the vest pocket was pepper spray. All of these items, except the mask, were provided by Leggett. Pavlik had the mask for years, provided to him by the Chicago Fire Department during his special operations assignment days.

Pavlik, as stated above, has acknowledged the facts that support his guilty plea. Of note, Pavlik did not display the chemical spray, he did not enter into the Capitol building, did not cause harm or injury to anyone, and did not personally damage any property while on the Capitol grounds or the tunnel.

## II. Guideline Calculation

The presentence investigation report at pages 9 through 11, contains the guideline calculation. The calculation is as follows:

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net

| Count One: | |
|---|---|
| Base Offense Level | 10 (USSG §2A2.4) |
| Specific Offense Characteristics | +3 (USSG§2A2.4(b)(1)(A) |
| Adjusted Offense Level | 13 |

| Count Five: | |
|---|---|
| Base Offense Level | 4 (USSG §2B2.3(a) |
| Specific Offense Characteristics | +2 (USSG §2B2.3(b)(1)(A)(vii) |
| Specific Offense Characteristics | +2 (USSG §2B2.3(b)(2) |
| Adjusted Offense Level | 8 |

Based on the multiple count adjustment, the combined adjusted offense level is 14, pursuant to Guideline §3D1.4. After including the reduction for acceptance of responsibility, pursuant to guideline §3E1.1(a), the total offense level is 12.

The defendant challenges the enhancement sought pursuant to Guideline §2B2.3(b)(2), asserting that the unrecovered chemical spray does not qualify as a "dangerous weapon" pursuant to Guideline §1B1.1 Additionally, the spray itself did not cause injury by the defendant. See United States v. Bartolotta, 153 F. 3d 875 (8th Cir. 1998) and United States v. Neill, 166 F. 3d 943 (9th Cir. 1999).

The defendant further asserts that if this Court finds that the chemical spray is not a "dangerous weapon", then the defendant further asserts that as a "zero point offender" he would qualify for an additional reduction of 2 levels pursuant to Amendment 821. Accordingly, the defendant asserts that the total offense level is 8.

The defendant agrees that he has zero criminal history points, and he is a criminal history category of I. The calculation recited in the presentence investigation report, a total

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net

offense level of 12 and criminal history of I creates an advisory guideline sentencing range of 10 to 16 months, and is in Zone C of the Guideline Sentencing Table.

**III. §3553(a) Argument**

Pursuant to §3553(a)(2), the defendant's sentence must reflect the seriousness of his offense, promote respect for the law, and deter him and other similarly situated individuals from engaging in criminal activity. The Federal Sentencing Guidelines provide a sentencing range in each case based on the severity of the offense and the offender's prior criminal history. The advisory ranges are listed on the sentencing table, found in Chapter Five, Part A of the Guidelines Manual. The sentencing table is subdivided into four zones (A,B,C, and D) which determine confinement options for each sentencing range. The four options, in increasing order are: probation only (i.e. zero months of confinement); probation that includes conditions or a combination of conditions such as home or intermittent confinement; imprisonment followed by a term of supervised release with conditions or a combination of conditions that substitute community confinement or home detention (a split sentence); and imprisonment only.

The sentencing guidelines have been made advisory and are no longer mandatory under the decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Booker requires the sentencing judge to begin the sentencing process by determining the applicable guideline range, but permits the judge, so long as they do not stray outside the statutory range, to sentence the defendant below or above the guideline range if the sentencing factors in the Sentencing Reform Act, 18 U.S.C. § 3553(a) warrant it. United States v. Roberson, 474 F. 3d 432 (7th Cir. 2007). The defendant acknowledges that the advisory guideline sentence is the presumptively reasonable sentence. United States v.

Lawrence S. Beaumont

Attorney at Law

650 N. Dearborn Suite 700
Chicago, Illinois 60654

(312)-287-2225
l.beaumont@att.net

Mykytiuk, 415 F. 3d 606 (7th Cir. 2005). However, the court should not presume that it is the correct sentence. Unites States v. Brown, 450 F. 3d 76 (1st Cir. 2006).

The court must impose a sentence sufficient but not greater than necessary after considering the factors listed in §3553(a). These factors include: the nature of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and sentencing range established by sentencing guidelines.

In Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) the court confirmed that, as to the sentencing court, the guideline range is simply one of several factors listed on 18 U.S.C. §3553 that must be considered in arriving at a just sentence, a sentence that is sufficient, but not greater than necessary, to meet the traditional purposes of criminal sentence. The District Court's job is not to impose a "reasonable" sentence but instead to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of section §3553(a)(2). United States v. Foreman, 456 F. 3d 638 (6th Cir. 2006). This language, also referred to as the "parsimony provision" of §3553(a), has become the "guidepost" for sentencing decision post-Booker. United States v. Ferguson, 456 F. 3d 660 (6th Cir. 2006). Pavlik respectfully asserts that as there are statutory and guideline sentencing alternatives available here, as sentence of imprisonment is not necessary to achieve the goals of sentencing.

**A. Joseph Pavlik's Personal History and Characteristics.**

Mr. Pavlik is 66 years old, a United States Citizen, born in Chicago, Illinois. Mr. Pavlik is a lifelong resident of Chicago, primarily the Southwest Side of Chicago, a community known for its modest single-family homes and working class residents, many of

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net

whom are employed by the Chicago Fire Department, Chicago Police Department, Chicago Public School System, and various departments of the City of Chicago.

The defendant's father, Joseph, died in 2019 from heart-related complications after an illness. Joseph Sr., the Defendant's father was an engineer for General Electric in Chicago, where he worked building and repairing large industrial electric motors. Joseph Sr. was forced into retirement at the age of 60, after a 40 year career, due to his heart related issues, ultimately passing away in 2019 as a result of congestive heart failure. The defendant, throughout his life, enjoyed a close and loving relationship with his father.

The defendant's mother, Irene, is 93 years old, lives in Chicago, and retired from her position as personal assistant to the CEO of Midway Airlines in 1993. The defendant's mother has undergone hip and knee replacement surgeries, and she suffers from COPD and high blood pressure. The defendant has daily contact with his mother, attends to her medical needs, and provides regular care to her.

The defendant has two sisters, one older and one younger. The defendant's younger sister lives in Chicago, his older sister lives in Orlando, Florida. The defendant is the primary family care provider to his mother, because one sibling lives in Florida, and the other has time commitments due to childcare for her own grandchildren.

The defendant has been married to his wife Janet for 39 years, and they have been in a supportive, loving relationship. Janet worked at a meat company from 1977 to 1986 and returned to outside employment in 1997 at the Chicago Public School system, retiring in 2017. Janet left the work force in 1986 in anticipation of the birth of their son, born May 29, 1987. Janet was a stay-at-home mom providing all needs to their son Joseph.

The defendant's son, Joseph Pavlik Jr. went on to become a police officer with the Justice, Illinois Police Department and the Fifth District SWAT Team Special Operations

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net

Unit. The defendant's son took his own life in 2020, an event that has devastated the defendant and his wife. Suicide is an alarmingly regular occurrence in the Illinois Law Enforcement community. The loss of their only child has been devastating to the defendant and his wife. Joseph Jr. left behind a wife (Bridget) and a son (Joseph II) who is now 7 years old. The defendant is very close to his daughter-in-law and grandchild, providing emotional and economic support to them. In remembrance of his son, the defendant has the logo of his 5th District SWAT Team tattooed on his left hand. This is the SWAT team unit that Joseph Jr. was a member of.

The defendant was raised in a middle-class neighborhood heavily populated by Chicago Fireman and Chicago Police officers, who are required to live within the Chicago city boundaries due to their employment requirements. The values that he learned growing up in a community of public servants, sparked the defendants' interest in serving his community, beginning in 1980, and retiring in 2013.

The defendant graduated high school in 1975 (Curie High School) and went on to attend Richard J. Daley and Truman College to obtain the necessary training and certification to meet the rigorous hiring requirements of the Chicago Fire Department. Pavlik was hired in 1980. Starting as a Chicago Fire Department Emergency Medical Technician. Through further training and education he moved on to serve in a fire suppression unit, ultimately rising to the rank of lieutenant, a position that he held at the time of his retirement. In addition to his specialized training in the fire suppression unit, the defendant has specialized training in firearms and martial arts. Since retiring from the Chicago Fire Department Pavlik taught several classes, firearm safety classes, and first-aid classes. Due to the instant matter the defendant has withdrawn from all of these activities.

Lawrence S. Beaumont

Attorney at Law

650 N. Dearborn Suite 700
Chicago, Illinois 60654

(312)-287-2225
l.beaumont@att.net

Aside from his various employment duties, which included participation in special operations programs, diving, hazardous material issues, bomb school training, and Homeland Security training, the defendant also volunteered for deployment in response to the 9/11 disaster at the World Trade Center. Pavlik spent two weeks at ground zero sifting through the disaster site searching for bodies, and body parts, digging through the downed building's rubble, mostly by hand, searching for human remains. Pavlik's exposure to the elements of ground zero lead to COPD and sinus issues, and annual lung cancer screenings at the University of Illinois Hospital in Chicago. Aside from the physical consequences of being at ground zero days after the terrorist attack, the psychological effect has long lingered. While Pavlik has suffered negative consequences from his volunteer presence at ground zero he does not regret his choice to volunteer, and he would dutifully answer such a call again at every opportunity to do so in the future.

Mr. Pavlik has led a law-abiding life as a public servant in his community, has been a dutiful loving husband, son, father and grandfather. The decision to volunteer at the 9/11 disaster site speaks volumes of the defendant's character and his willingness to put others before himself. The defendant's participation in this incident giving rise to this conviction was a less-than-one-hour departure from a lifetime of otherwise law abiding, respectful, and helpful citizenship. The defendant has also struggled through tragedy in the loss of his only son by suicide. Mental health counseling would likely benefit the defendant as well. Lastly, the charged incident and prosecution that has followed, has caused great embarrassment to the defendant and his reputation in the community. The label of being a convicted felon will follow the defendant forever, a constant reminder of a less than one hour lapse in judgement.

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net

**B. Nature and Circumstances of the Offense.**

The factual nature and circumstances of the offense are detailed above, and in the statement of the offenses (Doc. 83) filed with the Court. The defendant would further note that he did not participate in the planning of any attack, recruit others to participate in the offense, and was invited to Washington D.C. by his nephew.

The defendant's individual conduct did not result in physical injury to another, or damage to property. While Pavlik did possess a chemical spray, the spray was not discharged, nor did he threaten to discharge the spray. Lastly, from the initial contact with the law enforcement agents investigating this matter, Pavlik has been forthcoming, polite, cooperative and respectful. Pavlik has entered a plea of guilty and he has admitted his involvement in the charged offenses.

**C. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwarranted Sentencing Disparities.**

Mr. Pavlik has demonstrated his absolute respect for the law by his cooperative and polite interactions with the investigating FBI Agents, being candid and truthful. While on pretrial release for this offense the defendant has remained in compliance with his conditions of release, demonstrating the ability to comply with Court orders. The defendant has no prior arrests, which is also additional indicator that the defendant is a law-abiding citizen. The defendant's career as a fire fighter, his rank of lieutenant in the Fire Department, and his 9/11 volunteer work, are additional indicators of the defendant's respect for the law.

The sentence to be imposed must be sufficient, but not greater than necessary to achieve the goals of sentencing Pursuant to §3553(a)(2) the defendant's sentence must reflect the seriousness of his offense, promote respect for the law and deter him and other similarly situated individuals from engaging in criminal activity. The Federal Sentencing Guidelines

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net

provide a sentencing range in each case based on the severity of the offense and the offender's prior criminal history. The advisory ranges are listed in the sentencing table, found in Chapter 5, Part A of the Guidelines Manual. The sentencing table is subdivided into four zones (A,B,C, and D), which determine confinement options for each sentencing range. Those four options in increasing order are: probation only (i.e. zero months of confinement); probation that includes conditions or a combination of conditions such as home confinement or intermittent confinement; imprisonment followed by a term of supervised release with conditions or a combination of conditions that substitute community confinement or home detention (a split sentence); and imprisonment only. The offenses of conviction here are a Class C and Class D felony which allows the imposition of a sentence of probation of at least one year and not more than five years. The base offense levels for the two counts of conviction are 10 and 4. The defendant has zero criminal history points, placing him in criminal history category I. The defendant has no prior arrests, nor has he ever been incarcerated. The combination of the low offense levels, lack of prior criminal conduct, the defendant's age and personal circumstances establish that a sentence other than imprisonment is appropriate here, an extended term of probation with conditions. Codefendant Preller has been sentenced to five years probation, defendant Benjamin Cole, a related matter, was sentenced to four years probation, and Tyler Quintin Bensch, a related case, sentenced to two years probation. Avoiding unwarranted disparities in sentencing is a consideration here, like Preller, Cole, and Bensch, Pavlik did not cause injury to another, nor did he personally damage property.

**IV. Conclusion.**

Joseph Pavlik respectfully requests that the Court grant his request for a downward variance, for the reasons stated above. Specifically, the defendant seeks a sentence of 5 years

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net

probation, the imposition of a $200 special assessment, and the agreed upon $2000 in restitution. Mr. Pavlik, now retired, further requests, that a fine not be imposed pursuant to the provisions of Guideline §5E1.2(a)

Respectfully Submitted,

s/Lawrence S. Beaumont
Attorney for Defendant
650 N. Dearborn Suite 700
Chicago, Illinois 60654
l.beaumont@att.net
Office: 312-287-2225
Fax: 312-994-9105

Lawrence S. Beaumont
Attorney at Law
650 N. Dearborn Suite 700
Chicago, Illinois 60654
(312)-287-2225
l.beaumont@att.net